# SUPREME COURT

## OF

## North Carolina

### AT

### Raleigh

Jennifer Ray, Administratrix of the Estate of Mickela Nicholson; Linda Judge, Administratrix of the Estate of Marianne Dauscher; and Eileen and Roger Layaou, Co-Administrators of the Estate of Michael Layaou v. North Carolina Department of Transportation

No. 28A12

(Filed 14 June 2012)

**Tort Claims Act— public duty doctrine—negligent design and execution of road—failure to repair—gross negligence from failure to inspect**

The public duty doctrine did not bar plaintiffs' negligence claims against defendant North Carolina Department of Transportation (DOT) under the State Tort Claims Act (STCA) arising from a fatal automobile accident based on DOT's alleged negligent design and execution of the narrowing of a road, failure to repair, and gross negligence from failure to inspect. N.C.G.S. § 143-299.1A clarified the legislature's intent as to the role of the public duty doctrine under the STCA. The public duty doctrine is a defense only if the injury alleged is the result of: (1) a law enforcement officer's negligent failure to protect the plaintiff from actions of others or an act of God, or (2) a State officer's, employee's, involuntary servant's, or agent's negligent failure to perform a health or safety inspection required by statute.

1

Justice HUDSON concurring in part and dissenting in part.

Chief Justice PARKER dissenting.

Justice TIMMONS-GOODSON dissenting.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 720 S.E.2d 720 (2011), reversing and remanding an order entered by the North Carolina Industrial Commission on 13 July 2010. Heard in the Supreme Court on 17 April 2012.

> *Zaytoun Law Firm, PLLC, by Matthew D. Ballew and Robert E. Zaytoun, for plaintiff-appellees.*

> *Roy Cooper, Attorney General, by Amar Majmundar, Special Deputy Attorney General, for defendant-appellant.*

> *Patterson Harkavy LLP, by Burton Craige; and Kirby & Holt, L.L.P., by Isaac Thorp, for North Carolina Advocates for Justice, amicus curiae.*

NEWBY, Justice.

In this case we must determine whether the public duty doctrine bars plaintiffs' claims against defendant North Carolina Department of Transportation ("DOT") under the State Tort Claims Act ("STCA"). To answer this question we must consider the impact of the limitation placed on the use of the public duty doctrine by the General Assembly's 2008 amendment to the STCA. *See* N.C.G.S. § 143-299.1A (2011). Because we hold that N.C.G.S. § 143-299.1A clarified the legislature's intent as to the role of the public duty doctrine under the STCA, the limitation on the doctrine in that statute applies here. Consequently, the doctrine does not bar plaintiffs' claims.

Plaintiffs allege the following facts. On 31 August 2002 Mickela S. Nicholson was driving on RP 1010, a state-maintained road, in Johnston County, North Carolina. Nicholson had three passengers, Marianne Dausher, Michael Layaou, and Steven Carr. Nicholson was operating her automobile within the posted speed limit and with a proper lookout when she lawfully entered an eroded section of the highway near the shoulder. The condition of the road caused her vehicle to veer off the roadway. When she attempted to return to the highway, the erosion caused her to overcorrect. She lost control of

the car, crossing the center line and striking an oncoming automobile head-on. Nicholson and all her passengers were killed.

Plaintiffs, the estates of Nicholson, Layaou, and Dauscher, sued DOT for negligence under the STCA. Plaintiffs claim that DOT was negligent in designing and executing the narrowing of RP 1010 from three lanes to two and that the erosion defect "had existed for a substantial period of time prior to" the wreck such that DOT personnel knew or should have known of its existence and "failed to make appropriate repairs." DOT responded that the public duty doctrine bars the claims and moved for dismissal for failure to state a claim upon which relief can be granted under North Carolina Rule of Civil Procedure 12(b)(6). Deputy Industrial Commissioner Stephen T. Gheen denied DOT's motion, concluding that the claims were not barred. In a 13 July 2010 order, however, the Full Commission determined that plaintiffs' claims are barred by the doctrine and granted DOT's motion to dismiss.

The Court of Appeals reversed and remanded. After reviewing our public duty doctrine cases, the Court of Appeals concluded that the doctrine prohibits government liability for "failure to prevent the acts of third parties or failure to protect the general public from harm from an outside force" and for "important discretionary decision[s]" that involve "the allocation of limited resources." *Ray v. N.C. Dep't of Transp.*, —— N.C. App. ——, ——, 720 S.E.2d 720, 723, 724 (2011) (citations and quotation marks omitted). The Court of Appeals held that in this case the harm alleged was not from an outside source but from the actions of the State itself. *Id.* at ——, 720 S.E.2d at 724. Furthermore, according to the Court of Appeals, road maintenance is not a discretionary decision but an important duty of the State. *Id.* at ——, 720 S.E.2d at 724. Therefore, under our prior cases the public duty doctrine is inapplicable to plaintiffs' claims. *Id.* at ——, 720 S.E.2d at 724. Since it concluded that the doctrine did not bar plaintiffs' claims, the Court of Appeals declined to consider whether the 2008 amendment to the STCA had any role here. *Id.* at ——, 720 S.E.2d at 724. The dissenting judge found no distinction between the present case and *Myers v. McGrady*, 360 N.C. 460, 628 S.E.2d 761 (2006), in which we held that the public duty doctrine barred the plaintiff's negligence claim. *Ray*, —— N.C. App. at ——, 720 S.E.2d at 724 (Hunter, Robert C., J., dissenting). DOT appealed on the basis of the dissenting opinion.

The controlling question here is whether the public duty doctrine bars plaintiffs' claims. To answer that question we must consider

whether, as plaintiffs contend, the 2008 amendment to the STCA was a clarifying one, making it applicable to the case before us. Making that determination in this particular case requires a review of the history of sovereign immunity and the public duty doctrine in North Carolina.

This Court has long recognized the common law doctrine of sovereign immunity, acknowledging that "[i]t is an established principle of jurisprudence . . . that a state may not be sued . . . unless by statute it has consented to be sued or has otherwise waived its immunity from suit." *Smith v. Hefner*, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952) (citations omitted). Unless waived this protection extends to state agencies. *Id.* (citations omitted). The STCA, enacted in 1951, provides a limited waiver of sovereign immunity for the

> negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

N.C.G.S. § 143-291 (2011); *see also Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 479, 495 S.E.2d 711, 714 (noting that the STCA "permit[s] suit[s] in derogation of sovereign immunity"), *cert. denied*, 525 U.S. 1016, 119 S. Ct. 540, 142 L. Ed. 2d 449 (1998).

The public duty doctrine is a common law negligence doctrine that exists apart from the doctrine of sovereign immunity. *See Myers*, 360 N.C. at 465, 628 S.E.2d at 766 (describing the doctrine as "a separate rule of common law negligence that may limit tort liability, even when the State has waived sovereign immunity"). When it was enacted the STCA did not specifically address the public duty doctrine. Lacking legislative guidance, our Court turned to the common law. *See State v. Bass*, 255 N.C. 42, 47, 120 S.E.2d 580, 584 (1961) ("The common law prevails in this State unless changed by statute."). We first recognized the common law public duty doctrine in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991). In that case the estate of a woman killed by her husband sued a county sheriff for negligently failing to protect the victim from her husband. *Id.* at 366-67, 410 S.E.2d at 899. We held that the public duty doctrine barred her claim, stating, "The general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals." *Id.* at 370, 410

S.E.2d at 901 (citing *Coleman v. Cooper*, 89 N.C. App. 188, 193, 366 S.E.2d 2, 6, *disc. rev. denied*, 322 N.C. 834, 371 S.E.2d 275 (1988)). Because the public duty doctrine says that there is a duty to the public generally, rather than a duty to a specific individual, the doctrine operates to prevent plaintiffs from establishing the first element of a negligence claim—duty to the individual plaintiff. *See Kientz v. Carlton*, 245 N.C. 236, 240, 96 S.E.2d 14, 17 (1957) (citations omitted). We recognized two exceptions in which there is a duty to a particular individual, noting that the public duty doctrine does not apply to bar a claim

> (1) where there is a special relationship between the injured party and the police . . . ; and (2) "when a municipality . . . creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered."

*Braswell*, 330 N.C. at 371, 410 S.E.2d at 902 (quoting *Coleman*, 89 N.C. App. at 194, 366 S.E.2d at 6).

In *Stone v. North Carolina Department of Labor*, we recognized the doctrine's applicability to state agencies and to governmental functions other than law enforcement. 347 N.C. at 481, 495 S.E.2d at 716. *Stone* involved a chicken plant fire that killed a number of workers and injured others. *Id.* at 477, 495 S.E.2d at 713. Surviving workers and the estates of some deceased workers brought suit under the STCA, alleging that the North Carolina Department of Labor negligently failed to inspect the plant. *Id.* at 476-77, 495 S.E.2d at 713. An inspection would have revealed violations of the Occupational Safety and Health Act of North Carolina, "including the plant's inadequate and blocked exits and inadequate fire suppression system." *Id.* at 477, 495 S.E.2d at 713. Noting that the statutory requirement to inspect did not create a duty to specific individuals, we held that the public duty doctrine barred the claims. *Id.* at 477, 482-83, 495 S.E.2d at 714, 716-17.

Later that year we were faced with another negligence claim against the State's Department of Labor, this time by a plaintiff who was injured in a go-kart accident at an amusement park. *Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 194-95, 499 S.E.2d 747, 748 (1998). The brakes failed on the go-kart that the plaintiff was operating, and he crashed into a pole. *Id.* at 194, 499 S.E.2d at 748. The seat belt tightened on his abdominal area, causing severe injuries. *Id.* at 194-95, 499 S.E.2d at 748. The plaintiff claimed that a Department employee had negligently allowed the go-kart to pass inspection even though the

seat belt was not in compliance with the Administrative Code and that the employee had negligently failed to inform the park's manager of the problem. *Id.* at 195, 499 S.E.2d at 748-49. We determined that the public duty doctrine shielded the Department from liability because there was no duty to a specific person. *Id.* at 199, 499 S.E.2d at 751.

In our most recent case to hold that the public duty doctrine barred a negligence claim, thick smoke from a forest fire combined with fog to obscure the southbound lanes of Interstate Highway 95 ("I-95") in Northampton County, North Carolina. *Myers*, 360 N.C. at 461, 628 S.E.2d at 763. Shirley McGrady was driving on I-95 at approximately 4:40 a.m. on 9 June 2002 when she stopped the car in the southbound lane of travel because she could not see due to the smoke and fog. *Id.* Another driver collided with the rear of the car she had been driving, setting in motion a four-car wreck that led to Darryl Myers's death. *Id.* The plaintiff, Myers's estate, alleged that the North Carolina Division of Forest Resources was aware of the fire, knew that the smoke it produced could be dangerous to motorists, and nonetheless failed to control the fire, to warn motorists, and to monitor the conditions. 360 N.C. at 461-62, 628 S.E.2d at 763. We held that the public duty doctrine prevented the Division from being liable for failing to control the smoke because of a lack of duty to a specific individual. *Id.* at 463, 468, 628 S.E.2d at 763-64, 767.

After these cases were decided, the General Assembly codified the public duty doctrine. In 2008 the legislature added N.C.G.S. § 143-299.1A to the STCA, which states:

(a) Except as provided in subsection (b) of this section, the public duty doctrine is an affirmative defense on the part of the State department, institution, or agency against which a claim is asserted if and only if the injury of the claimant is the result of any of the following:

(1) The alleged negligent failure to protect the claimant from the action of others or from an act of God by a law enforcement officer as defined in subsection (d) of this section.

(2) The alleged negligent failure of an officer, employee, involuntary servant or agent of the State to perform a health or safety inspection required by statute.

**RAY v. N.C. DEP'T OF TRANSP.**

[366 N.C. 1 (2012)]

(b) Notwithstanding subsection (a) of this section, the affirmative defense of the public duty doctrine may not be asserted in any of the following instances:

(1) Where there is a special relationship between the claimant and the officer, employee, involuntary servant or agent of the State.

(2) When the State, through its officers, employees, involuntary servants or agents, has created a special duty owed to the claimant and the claimant's reliance on that duty is causally related to the injury suffered by the claimant.

(3) Where the alleged failure to perform a health or safety inspection required by statute was the result of gross negligence.

N.C.G.S. § 143-299.1A. In enacting this provision the legislature incorporated much of our public duty doctrine case law. Subdivision 143-299.1A(a)(1) includes the *Braswell* holding for law enforcement officers.[1] Subdivision 143-299.1A(a)(2) aligns with *Stone's* holding that there is no liability for negligent failure to inspect under the public duty doctrine. Finally, subdivisions 143-299.1A(b)(1) and (b)(2) codify the exceptions to the public duty doctrine we have recognized since our first acknowledgment of the doctrine. *See Braswell*, 330 N.C. at 371, 410 S.E.2d at 902; *see also Multiple Claimants v. N.C. Dep't of Health & Human Servs.*, 361 N.C. 372, 374, 646 S.E.2d 356, 357-58 (2007).

By incorporating much of our public duty doctrine case law into the STCA, the General Assembly recognized that our Court was correct in utilizing the doctrine in our STCA analysis. The General Assembly also made clear that the doctrine is to be a more limited one than the common law might have led us to understand. Having

---

1. N.C.G.S. § 143-299.1A(d) defines "law enforcement officer" for the purposes of the public duty doctrine. That statute provides: "For purposes of this section, 'law enforcement officer' means a full time or part time employee or agent of a State department, institution, or agency or an agent of the State operating under an agreement with a State department, institution, or agency of the State who is any of the following: (1) Actively serving in a position with assigned primary duties and responsibilities for prevention and detection of crime or the general enforcement of the criminal laws of the State or serving civil processes. (2) Possesses the power of arrest by virtue of an oath administered under the authority of the State. (3) Is a juvenile justice officer, chief court counselor, or juvenile court counselor. (4) Is a correctional officer performing duties of custody, supervision, and treatment to control and rehabilitate criminal offenders. (5) Is a firefighter as defined in G.S. 106 955(1). (6) Is a probation officer appointed under Article 20 of Chapter 15 of the General Statutes." N.C.G.S. § 143-299.1A(d).

relied on the common law in the absence of legislative guidance, we must now revisit the statute in light of the amendment. *See Shelton v. Morehead Mem'l Hosp.*, 318 N.C. 76, 81, 347 S.E.2d 824, 828 (1986) ("Legislative intent controls the meaning of a statute . . . .").

The language of N.C.G.S. § 143-299.1A reflects an intent to limit the public duty doctrine's application under the STCA. By the plain language of the statute, the public duty doctrine is a defense only if the injury alleged is the result of (1) a law enforcement officer's negligent failure to protect the plaintiff from actions of others or an act of God, or (2) a State officer's, employee's, involuntary servant's, or agent's negligent failure to perform a health or safety inspection required by statute. N.C.G.S. § 143-299.1A(a); *see also Fowler v. Valencourt*, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993) ("If the language used is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language."). In all other cases the public duty doctrine is unavailable to the State as a defense. The instances in which the doctrine is not a defense include not only the three specific exclusions listed in subsection (b), but also situations not listed explicitly. *See* N.C.G.S. § 143-299.1A(a) ("[T]he public duty doctrine is an affirmative defense . . . *if and only if* the injury of the claimant is the result of any of the following . . . . (emphasis added)).

That the goal of the amendment was to limit the use of the public duty doctrine as an affirmative defense is also suggested by the amendment's title. We have previously held that even when the language of a statute is plain, "the title of an act should be considered in ascertaining the intent of the legislature." *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 812, 517 S.E.2d 874, 879 (1999) (citing *State ex rel. Cobey v. Simpson*, 333 N.C. 81, 90, 423 S.E.2d 759, 764 (1992)). Here the title of the enactment amending the STCA, "Limit use of public duty doctrine as an affirmative defense," indicates that N.C.G.S. § 143-299.1A is designed to decrease the number of factual scenarios in which the public duty doctrine is used to bar a claim. Taken together, the plain language of the amendment, listing only two instances in which the affirmative defense of the public duty doctrine applies, and the title, suggesting an intention to constrict the use of the doctrine, demonstrate that the legislature meant to recognize the doctrine as one of limited applicability.

Having determined that section 143-299.1A limits the use of the public duty doctrine as an affirmative defense, we must identify the cases in which this limitation will operate. "In construing a statute

with reference to an amendment it is presumed that the legislature intended either (a) to change the substance of the original act, or (b) to clarify the meaning of it." *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968) (citation omitted). A clarifying amendment, unlike an altering amendment, is one that does not change the substance of the law but instead gives further insight into the way in which the legislature intended the law to apply from its original enactment. *See Ferrell v. Dep't of Transp.*, 334 N.C. 650, 659, 435 S.E.2d 309, 315-16 (1993). As a result, in addition to applying to all cases brought after their effective dates, such amendments apply to all cases pending before the courts when the amendment is adopted, regardless of whether the underlying claim arose before or after the effective date of the amendment. *See Wells v. Consol. Jud'l Ret. Sys. of N.C.*, 354 N.C. 313, 318, 553 S.E.2d 877, 880 (2001); *Ferrell*, 334 N.C. at 661-62, 435 S.E.2d at 317 (applying a 1992 clarifying amendment to a claim arising and filed in 1989); *Childers*, 274 N.C. at 260, 263, 162 S.E.2d at 483-84, 486 (finding an amendment to be clarifying and applying the statute at issue as amended to a cause of action arising pre-amendment).

Here we are faced with an amendment to the STCA that specifies an effective date of 1 October 2008 and that it is to apply to claims arising on or after that date. As concluded in the cases cited above, if the General Assembly meant these changes substantively to amend the STCA, the changes would apply only to claims arising on or after 1 October 2008. If, however, the legislature intended the statute to clarify the application of the public duty doctrine to the STCA, section 143-299.1A will apply to all claims pending or brought before our State's courts after the amendment's passage.

It is this Court's job to determine whether an amendment is clarifying or altering. *See In re Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) ("Questions of statutory interpretation are ultimately questions of law for the courts . . . ."). The General Assembly's inclusion of an effective date in the session law does not alter this outcome. All statutes are given an effective date by the General Assembly, either in the statute itself or under N.C.G.S. § 120-20, and the default rule provides statutes with a prospective effective date. *See* N.C.G.S. § 120-20 (2011) ("Acts of the General Assembly shall be in force *only from and after* 60 days after the adjournment of the session in which they shall have passed, unless the commencement of the operation thereof be expressly otherwise directed." (emphasis added)). Given that all statutes have such effec-

tive dates, an effective date, standing alone, is insufficient information for our Court to conclude, in carrying out the task of interpreting the statute, that the statute is a substantive change in the law. Unless the legislature provides guidance more specific than a prospective effective date as to whether an amendment is clarifying or altering, the General Assembly cannot know what the Court will ultimately conclude on that matter. *See Childers*, 274 N.C. at 260, 162 S.E.2d at 484 ("Even 'the action of the legislature in amending a statute so as to make it directly applicable to a particular case is not a conclusive admission that it did not originally cover such a case.'" (citation omitted)). In the event that the amendment is a substantive change in the law, the effective date will apply. However, when the amendment is determined to be clarifying by this Court, the effective date does not supersede the law that governs how clarifying amendments control. *See Ferrell*, 334 N.C. at 661-62, 435 S.E.2d at 317 (finding an amendment clarifying and applying it to a claim arising before the Session Law's specified effective date of 20 July 1992 even when the statute did not provide for retroactive application); *Childers*, 274 N.C. at 263, 162 S.E.2d at 486.

"To determine whether the amendment clarifies the prior law or alters it requires a careful comparison of the original and amended statutes." *Ferrell*, 334 N.C. at 659, 435 S.E.2d at 315. If the statute initially "fails expressly to address a particular point" but addresses it after the amendment, "the amendment is more likely to be clarifying than altering." *Id.* For example, in *Ferrell v. Department of Transportation* we considered the price at which DOT was required to reconvey to its original owners land taken by eminent domain but no longer needed. 334 N.C. at 652-53, 435 S.E.2d at 311. The land at issue was taken in 1972, and DOT made the initial offer to reconvey to the original owners, the plaintiffs in the case, in 1989. *Id.* at 652-53, 435 S.E.2d at 311-12. At that time the relevant statute governing reconveyance of land after an eminent domain taking did not specify the sell-back price. *See* N.C.G.S. § 136-19 (1986). By the time the action reached our Court in 1993, however, the General Assembly had amended N.C.G.S. § 136-19 to state that the selling price was to be "the full price paid to the owner when the property was taken, the cost of any improvements, together with interest at the legal rate to the date when the decision was made to offer the return of the property." Act of July 20, 1992, ch. 979, sec. 1, 1991 N.C. Sess. Laws (Reg. Sess. 1992) 907, 907-10. This Court decided that the price to be paid for the pre-1992 purchase and reconveyance was as specified by the 1992 amendment, concluding:

Since here the statute before amendment provided no express guidance as to selling price, the amendment which addresses the selling price is best interpreted as clarifying the statute as it existed before the amendment. It is, therefore, strong evidence of what the legislature intended when it enacted the original statute.

*Ferrell*, 334 N.C. at 659, 435 S.E.2d at 315-16. Likewise, here, before the 2008 amendment, the STCA did not address the application of the public duty doctrine to claims made under it. Now section 143-299.1A specifically addresses use of the doctrine, making it "strong evidence" of the General Assembly's original intent regarding the public duty doctrine when the legislature enacted the STCA. *See id.*

The codification of nearly all of our public duty doctrine jurisprudence further suggests that the amendment is a clarifying one. Clarifying amendments are distinct from altering amendments in that they do not "change the substance of" the original law. *See Childers*, 274 N.C. at 260, 162 S.E.2d at 483. Before the amendment the public duty doctrine was, because of a lack of guidance from the legislature, purely a matter of judicial recognition of the common law. With the amendment the General Assembly has affirmed that the public duty doctrine is to apply in virtually the same manner as we have recognized since *Braswell*. Because the legislature left essentially all our pre-amendment cases intact, there has not been a complete change in the law but instead only an explanation of the limited role of the public duty doctrine.

This conclusion is consistent with the overall goal of the STCA. The STCA was passed to give greater access to the courts to plaintiffs in cases in which they were injured by the State's negligence. *See Stone*, 347 N.C. at 485, 495 S.E.2d at 718 (Orr, J., dissenting). The General Assembly amended the STCA to prevent an overly broad application of a doctrine that would limit that access. Since the goal of both the STCA and the amendment was to increase plaintiffs' ability to pursue recovery, it would be wholly inequitable to allow a person who was injured on or after 1 October 2008 to recover from the State but to deny that same benefit to a person similarly injured before the amendment was enacted. To do so would unnecessarily close a door to recovery that the STCA meant to open. Consistent with its goal when it enacted the STCA, the General Assembly has signaled that the 2008 amendment is a clarification in pursuit of that end. *See Trs. of Rowan Technical Coll. v. J. Hyatt Hammond Assocs.*, 313 N.C. 230, 240, 328 S.E.2d 274, 280 (1985) (finding support

for the conclusion that an amendment was a clarifying one by examining the purpose for enacting the amendment).

Viewed broadly, we are faced here with a situation in which the General Assembly enacted a measure allowing negligence claims against the State, but did not include a provision specifying whether and how the public duty doctrine was to apply. In the absence of such a provision this Court, as it should, looked to the common law. The General Assembly reacted, speaking on a topic that it had not previously addressed and stating that, while our Court had largely properly applied the doctrine, the doctrine is to be a limited one. Taken together, these facts indicate that the General Assembly intended to clarify the role of the public duty doctrine in the STCA with N.C.G.S. § 143-299.1A. Because the legislature has now specifically explained how the public duty doctrine is to be applied, the amendment clarifies the General Assembly's intention regarding the public duty doctrine from the time of the original enactment of the STCA.

Knowing now that the amendment applies to the case at bar, we must consider whether the public duty doctrine blocks plaintiffs' claims. At this stage we take plaintiffs' allegations as true, and any inferences are resolved in their favor. *See Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 351, 416 S.E.2d 166, 168 (1992) (citing *Jackson v. Bumgardner*, 318 N.C. 172, 174-75, 347 S.E.2d 743, 745 (1986)). On the face of their complaints, plaintiffs appear to make three types of claims. To the extent plaintiffs make a claim for negligent "design and execution" of the narrowing of RP 1010 from three lanes to two, that claim is not barred by the public duty doctrine. Similarly, to the extent that plaintiffs claim negligent failure to repair, that claim is not barred. Neither claim is for negligent failure to inspect pursuant to a statute, so N.C.G.S. § 143-299.1A(a)(2) will not allow the doctrine to be an affirmative defense. Likewise, as DOT does not fit within the definition of a law enforcement officer, subdivision (a)(1) will not operate to bar the claims. *See* N.C.G.S. § 143-299.1A(d).

Plaintiffs also claim that DOT should have known of the defect because it had existed for a substantial period of time before the accident in question. Here a claim that DOT should have known of the defect amounts to a claim that DOT negligently failed to inspect the roadway for such defects. Assuming *arguendo* that N.C.G.S. § 143B-346 creates a statutory requirement to inspect state roads for safety, for their claim to survive the public duty doctrine defense plaintiffs must, under the amendment, allege that DOT was grossly

negligent in their failure to inspect. *See id.* § 143-299.1A(a)(2), (b)(3). By exempting ordinary negligent failure to inspect from liability the General Assembly made it clear that it did not intend for every circumstance in which a state agency failed to inspect for safety to give rise to liability. Nonetheless, under the statute, at some level the negligence becomes gross and therefore, actionable. *See id.* § 143-299.1A(b)(3). Gross negligence is determined based on the facts and circumstances of each case and is a matter generally left to the jury. *See Smith v. Stepp*, 257 N.C. 422, 425, 125 S.E.2d 903, 906 (1962). Our Court has described the difference between ordinary and gross negligence as follows:

> [T]he difference between the two is not in degree or magnitude of inadvertence or carelessness, but rather is intentional wrongdoing or deliberate misconduct affecting the safety of others. An act or conduct rises to the level of gross negligence when the *act* is done purposely and with knowledge that such act is a breach of duty to others, i.e., a *conscious* disregard of the safety of others.

*Yancey v. Lea*, 354 N.C. 48, 53, 550 S.E.2d 155, 158 (2001).

In their complaints plaintiffs allege that "[t]he defective roadway condition and drop-off had existed for a substantial period of time prior to the collision." This assertion indicates that a considerable period of time passed without DOT inspecting the road or noticing any defect in it. Though the test for gross negligence turns on the totality of the circumstances, two factors are especially relevant— purposeful conduct and disregard for the safety of others. *See id.* Reading the allegations in the light most favorable to the plaintiffs, the passage of a substantial period of time since development of the defect without its being noticed by DOT gives rise in this case to the inference that DOT intentionally avoided traveling on or inspecting RP 1010, which would have provided an opportunity to become aware of the defect and make a decision on whether to repair it. That inference, combined with the awareness that an uninspected road can present a danger to travelers, is sufficient to support a claim for gross negligence at this stage.

Because we hold that N.C.G.S. § 143-299.1A clarifies the role of the public duty doctrine under the STCA, the doctrine does not bar plaintiffs' claims, and those claims can go forward. The Court of Appeals decision is affirmed as modified.

MODIFIED AND AFFIRMED.

Justice HUDSON concurring in part and dissenting in part.

I agree with Chief Justice Parker and Justice Timmons-Goodson that the majority's analysis is flawed regarding the retroactivity of the 2008 amendment; I share the concern that serious and extensive unintended consequences could flow from this decision. However, I agree with the majority that two types of plaintiffs' claims should not be dismissed. Accordingly, I concur in part and dissent in part.

I agree with both dissenting opinions that the 2008 amendment cannot be construed as a clarifying amendment. I am especially convinced by the plain language of the statute, which states that the 2008 amendment "becomes effective October 1, 2008, and applies to claims arising on or after that date." Act of Aug. 4, 2008, Ch. 170, Sec. 2, 2008 N.C. Sess. Laws 690, 691. Second, the caption of the amendment states that its purpose is to "limit the use of the public duty doctrine as an affirmative defense," indicating an intent to change (by limiting) the existing law. *Id.* at 690. In my view, it is not our role to disregard this plain expression of legislative intent and this plain statutory language and apply the amendment here to cases that arose in 2002. Further, I fear that by so doing the majority jeopardizes the status of any number of other substantive amendments throughout the general statutes. I would hold that the 2008 amendment does not apply to this case.

However, I would hold that the public duty doctrine, as previously articulated by this Court, does not bar plaintiffs' claims. As pointed out by the majority, plaintiffs made three types of claims in their complaints. The first two claims are for (1) negligent design and execution and (2) negligent failure to repair. I see no authority that would apply the public duty doctrine to bar these two claims.

To date, this Court has only examined the public duty doctrine as an affirmative defense in five cases. In two of those cases, we examined the doctrine as it related to the actions of law enforcement and other public safety officers. *See Myers v. McGrady*, 360 N.C. 460, 467-68, 628 S.E.2d 761, 766-67 (2006); *Braswell v. Braswell*, 330 N.C. 363, 370-71, 410 S.E.2d 897, 901-02 (1991). In another, we found that an exception to the public duty doctrine applied. *Multiple Claimants v. N.C. Dep't of Health & Human Servs.*, 361 N.C. 372, 378-79, 646 S.E.2d 356, 360-61 (2007). The two cases most relevant here addressed the public duty doctrine in the context of state agencies

and the duty to inspect. *Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 499 S.E.2d 747 (1998); *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 495 S.E.2d 711, *cert. denied by* 525 U.S. 1016 (1998). In both cases we held that the public duty doctrine was available as an affirmative defense to state agencies in cases of negligent inspection. *Hunt*, 348 N.C. at 197-99, 499 S.E.2d at 750-51 (holding that the public duty doctrine barred a plaintiff's suit for negligent inspection of go-karts); *Stone*, 347 N.C. at 483, 495 S.E.2d at 717 (holding that the public duty doctrine barred the plaintiffs' suit for negligent inspection of a chicken plant). Here two of the plaintiffs' claims do not stem from negligent inspection. Instead, plaintiffs' allegations describe claims based on negligent design and negligent failure to repair. Therefore, I would hold that the public duty doctrine cannot apply to bar plaintiffs' first two claims, and I would allow plaintiffs' case to go forward on those two claims. The Tort Claims Act generally waives the State's sovereign immunity and provides that negligence claims, including these, may be pursued against the State. Thus, I concur in the part of the majority opinion that affirms the Court of Appeals' reversal of the Full Commission's dismissal of these two claims.

For these reasons, I respectfully concur in part and dissent in part.

Chief Justice PARKER, dissenting.

Although the Tort Claims Act represents "a limited waiver of [the State's] sovereign immunity," *Myers v. McGrady*, 360 N.C. 460, 464, 628 S.E.2d 761, 764 (2006), its enactment in 1951 did not abrogate the public duty doctrine. *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 479, 495 S.E.2d 711, 714 (holding that "the plain words of the statute indicate an intent that the [public duty] doctrine apply to claims brought under the Tort Claims Act"), *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449 (1998). Rather, "the Tort Claims Act . . . incorporat[ed] the existing common law rules of negligence, including [the public duty] doctrine." *Id.* at 479, 495 S.E.2d at 715; *cf. Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 196, 499 S.E.2d 747, 749 (1998) (adopting our reasoning in *Stone*). Although we first recognized the public duty doctrine in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991), which involved a negligence suit against law enforcement, in subsequent decisions we reiterated the doctrine's applicability and permitted its logical coverage of other government actors. *Stone*, 347 N.C. at 481, 495 S.E.2d at 716; *see also Multiple Claimants v. N.C. Dep't of Health & Human Servs.*, 361 N.C. 372, 378, 646 S.E.2d 356, 360 (2007) (holding that DHHS, although within public duty doctrine's scope, was liable

to victims of prison fire because applicable statutes created "special relationship" of duty owed by DHHS to inmates as a class); *Myers,* 360 N.C. at 468, 628 S.E.2d at 767 (holding Division of Forest Resources did not owe specific duty to plaintiffs injured when mismanaged forest fire smoke occluded roadways); *Hunt,* 348 N.C. at 199, 499 S.E.2d at 751 (holding Department of Labor's statutory duties did not create a private right of action and that to hold otherwise would result in the State becoming a "virtual guarantor" of safety of every go-kart subject to inspection).

These cases demonstrate that the Tort Claims Act did not eliminate the public duty doctrine, which continued to exist in a form not limited by the strictures of the amendment passed by the General Assembly in 2008. Consequently, the same analysis we applied in *Multiple Claimants, Myers, Hunt,* and *Stone* is applicable here. Under that framework, the key question is "whether the language of the relevant statutes and regulations clearly mandates a standard of conduct owed by an agency to the complainant." *Multiple Claimants,* 361 N.C. at 376, 646 S.E.2d at 359. As recognized by the dissenting judge at the Court of Appeals, *Ray v. N.C. Dep't of Transp.,* —— N.C. App. ——, ——, 720 S.E.2d 720, 724-25 (2011) (Hunter, Robert C., J., dissenting), plaintiffs cannot prevail under that analysis.

To avoid the result compelled by our precedents, the majority has endeavored to superimpose the amended Tort Claims Act—and thus a more limited form of the public duty doctrine—upon claims that antedate it. Specifically, the majority gives the 2008 amendment retroactive effect by construing it as a "clarification" of what the legislature believed the law already was. That interpretation is unsupportable.

"An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute." 1A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 22:31, at 374-75 (7th ed. 2009) [hereinafter Singer & Singer] (footnote omitted). In this instance the General Assembly did not make this supposed clarification until ten years after *Stone* and *Hunt* and seventeen years after *Braswell.* Thus, timing weighs against the majority's interpretation. Most significant, however, is that the 2008 amendment does not "construe" or "clarify" the Tort Claims Act at all. Rather, the amendment changes the law by limiting a preexisting common law doctrine not mentioned in the initial iteration of the Tort Claims Act.

Moreover, the plain language of the amendment states that it only applies to "claims arising on or after" its effective date. Act of July 9, 2008, ch. 170, sec. 2, 2008 N.C. Sess. Laws 690, 691. "This language is too plain for construction." *Pac. Mut. Life Ins. Co. v. Ins. Dep't*, 144 N.C. 305, 307, 144 N.C. 442, 444, 57 S.E. 120, 121 (1907). "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it plain and definite meaning . . . ." *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980) (citations omitted). The text of the amendment leaves nothing to implication. "[T]hat which is expressed makes that which is implied to cease." *Howell v. Travelers Indem. Co.*, 237 N.C. 227, 231-32, 74 S.E.2d 610, 614 (1953) (internal quotation marks omitted). By expressly limiting the effect of the amendment to claims arising "on or after" its effective date of 1 October 2008, the General Assembly manifested an intention not to impose these limitations on the public duty doctrine for antecedent tort claims. Plaintiffs' wrongful death claims are among the latter category.

This plain language also prohibits reading the amendment as a "clarification" of what the law already was. We have addressed the issue before:

> In construing a statute with reference to an amendment, the presumption is that the legislature intended to change the law. . . . We also consider it significant that [the act in question] provide[s] that the amendment shall not be applied retroactively. This is strong evidence that the legislature understood that the amendment occasioned a change in, rather than a clarification of, existing law.

*State ex rel. Utils. Comm'n v. Pub. Serv. Co. of N.C.*, 307 N.C. 474, 480, 299 S.E.2d 425, 429 (1983) (citing *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 483-84 (1968)). Similarly, in the instant case, the legislature's insertion of a proviso prescribing only prospective application serves as "strong evidence" refuting the notion that the 2008 amendment was intended to clarify existing law. Of note, the session law amending the statute in *Ferrell v. Department of Transportation*, 334 N.C. 650, 435 S.E.2d 309 (1993), cited by the majority, stated that it would be effective upon ratification without any specific reference to prospective or retrospective application. Act of July 2, 1992, ch. 979, sec. 2, 1991 N.C. Sess. Laws 907, 910.

Additional evidence that the General Assembly understood it was limiting a preexisting doctrine rather than clarifying it can be found in the caption to the amendment, which reads as follows:

**RAY v. N.C. DEP'T OF TRANSP.**

[366 N.C. 1 (2012)]

> An act to limit the use of the public duty doctrine as an affirmative defense for claims under the State Tort Claims Act in which the injuries of the claimant are the result of the alleged negligent failure of certain parties to protect claimants from the action of others.

Ch. 170, 2008 N.C. Sess. Laws at 690. As we recognized long ago, a statute's caption is relevant to its construction. *Smith v. Davis,* 228 N.C. 172, 178, 45 S.E.2d 51, 56 (1947). "[W]hen the meaning of an act of the General Assembly is in doubt, reference may be had to the title and context of the act of legislative declarations of the purpose of the act,—the intent and spirit of the act controlling in its construction." *Id.* at 179, 45 S.E.2d at 57 (citing *inter alia, State v. Woolard,* 119 N.C. 485, 119 N.C. 779, 25 S.E. 719 (1896)). Here the caption or title of the 2008 amendment shows us that the legislature sought to "limit" the public duty doctrine—an affirmative defense that had survived North Carolina's adoption of the Tort Claims Act.

Despite this strong evidence of the legislature's intent and understanding of the law, the majority's opinion gives retroactive life to an amendment that has the effect of depriving the Department of Transportation of a common law defense. Our rules of construction do not permit this result. *Smith v. Mercer,* 276 N.C. 329, 337, 172 S.E.2d 489, 494 (1970) ("It is especially true that [a] statute or amendment will be regarded as operating prospectively . . . where it is in derogation of a common-law right, or where the effect of giving it a retroactive operation would be to . . . *invalidate a defense which was good when the statute was passed* . . . ." (quoting 50 Am. Jur. *Statutes* § 478) (internal quotation marks omitted)); *see also* 2 Singer & Singer § 41:4, at 415-16 ("A statutory amendment . . . cannot be given retroactive effect in the absence of a clear expression of legislative intent to do so.").

The original Tort Claims Act did not speak to the public duty doctrine at all. The doctrine continued to exist, in the form in which it was applied in *Hunt* and *Stone,* at the time plaintiffs' decedents had their accident. If the legislature had intended to "clarify" the relationship between the Tort Claims Act and the public duty doctrine— a subject on which it had not yet spoken—it could have made that intention manifest. If it had intended to give the 2008 amendment retroactive scope, it could have done so. It did neither. I therefore respectfully dissent.

Justice TIMMONS-GOODSON, dissenting.

In its analysis, the majority disregards this Court's prior precedent and incorrectly applies a well-established canon of statutory interpretation involving the construction of amendatory acts. Accordingly, I respectfully dissent.

## I.

As explained by the dissent at the Court of Appeals, this case is controlled by *Myers v. McGrady*, 360 N.C. 460, 628 S.E.2d 761 (2006). I agree with the essence of that dissent and will not repeat it here. *See Ray v. N.C. Dep't of Transp.*, —— N.C. App. ——, ——, 720 S.E.2d 720, 726 (2011) (Hunter, Robert C., J., dissenting) ("[B]ecause the DOT owes a recognized duty to the general public and not to plaintiffs individually, I must conclude plaintiffs have failed to state claims in negligence.").

## II.

I write further to express my concern regarding the majority's retrospective application of N.C. Session Law 2008-170, codified as N.C.G.S. § 143-299.1A (2011), which the majority mistakenly views as a clarification of the State Tort Claims Act, N.C.G.S. § 143-291(a) (2011). Section 143-299.1A, which I will refer to as the "2008 Amendment," does ***not*** apply here.

Whether the 2008 Amendment applies to this case is a matter of legislative intent. *See Shelton v. Morehead Mem'l Hosp.*, 318 N.C. 76, 81, 347 S.E.2d 824, 828 (1986) ("Legislative intent controls the meaning of a statute . . . ."). "If the language used is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language." *Fowler v. Valencourt*, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993). By its own terms the 2008 Amendment "becomes effective October 1, 2008, and ***applies to claims arising on or after that date.***" Act of Aug. 4, 2008, Ch. 170, Sec. 2, 2008 N.C. Sess. Laws 690, 691 (emphasis added). The facts giving rise to this case took place, and the case was filed, prior to 1 October 2008. Thus, the plain language of the 2008 Amendment indicates that the 2008 Amendment does not apply to this case.

Rather than address the language of the 2008 Amendment itself, however, the majority invokes the doctrine of legislative clarification. This is a canon of statutory construction in which we use a later legislative enactment to assist in determining the meaning of a former

ambiguous legislative enactment. *See Childers v. Parker's, Inc.*, 274 N.C. 256, 263, 162 S.E.2d 481, 486 (1968) (concluding that a statutory alteration was a clarifying amendment when it "merely made specific that which had theretofore been implicit").[2]

The doctrine operates as follows: When the legislature alters a statute, we presume that the legislature intended either to "(1) change the substance of the original act or (2) clarify the meaning of it." *Trs. of Rowan Technical Coll. v. J. Hyatt Hammond Assocs.*, 313 N.C. 230, 240, 328 S.E.2d 274, 280 (1985) (citing *Childers*, 274 N.C. at 260, 162 S.E.2d at 483). If the legislature altered an *unambiguous* statute, a further presumption arises that the legislature intended to change the existing law. *Childers*, 274 N.C. at 260, 162 S.E.2d at 484. Alternatively, if the legislature altered an *ambiguous* statute, the presumption arises that the legislature only intended to " 'clarify that which was previously doubtful.' " *Trs. of Rowan Technical Coll.*, 313 N.C. at 240, 328 S.E.2d at 280 (quoting *Childers*, 274 N.C. at 260, 162 S.E.2d at 484).

This distinction between a substantive alteration in the original statute and a clarifying alteration is a meaningful one. We have concluded that a clarifying amendment, unlike an altering amendment, applies to all cases pending or brought before the courts prior to the passage of the clarifying amendment. *Wells v. Consol. Jud'l Ret. Sys. of N.C.*, 354 N.C. 313, 318, 553 S.E.2d 877, 880 (2001); *Ferrell v. Dep't of Transp.*, 334 N.C. 650, 659, 435 S.E.2d 309, 315-16 (1993) (applying a 1992 clarifying amendment to a claim arising and filed in 1989); *Childers*, 274 N.C. at 263, 162 S.E.2d at 485-86 (applying clarifying amendment to a cause of action arising pre-amendment). Consequently, if, as the majority contends, the 2008 Amendment is a clarification of the Tort Claims Act, the 2008 Amendment applies to the instant matter, even though the action arose and was filed prior to 1 October 2008, the effective date of the 2008 Amendment. Thus, whether the 2008 Amendment is a clarification of the Tort Claims Act, and therefore to be applied retrospectively, turns on whether there is

---

2. *See* also 1A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 22:30, at 369 (7th ed. 2009) [hereinafter Singer, *Statutes*] ("[T]he time and circumstances surrounding the enactment of an amendment may indicate that the change wrought by the amendment was formal only—that the legislature intended merely to interpret the original act."); 73 Am. Jur. 2d *Statutes* § 132, at 341-42 (2001) ("[E]very change in phraseology does not indicate a change in substance and intent. [T]hus, a change in phraseology may be only to improve the diction, or to clarify that which was previously doubtful." (footnotes omitted)).

**RAY v. N.C. DEP'T OF TRANSP.**

[366 N.C. 1 (2012)]

an ambiguity in the Tort Claims Act illuminated by the 2008 Amendment.[3]

Enacted in 1951, and still in effect today, the Tort Claims Act adopted a partial waiver of the State's sovereign immunity for tort liability.[4] The 1951 Tort Claims Act did not address the public duty doctrine. This is hardly surprising. The public duty doctrine was not recognized in our jurisprudence until this Court adopted it in 1991 in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991), and made clear that the State could, under certain circumstances, rely on the doctrine as an affirmative defense. As the majority opinion correctly points out, after 1991, and until the 2008 Amendment, our case law made clear the circumstances under which the public duty doctrine applied. Consequently, there was never an ambiguity in the Tort Claims Act as to the applicability of the public duty doctrine. Between 1951 and 1991 the doctrine was nonexistent in State jurisprudence and therefore inapplicable. Between 1991 and 2008 the doctrine was recognized in State jurisprudence and therefore applicable as per our case law. Accordingly, because there was no ambiguity in the Tort Claims Act to clarify, the 2008 Amendment was an amendatory act to be applied prospectively. *See Alliance Co. v. State Hosp.*, 241 N.C. 329, 332, 85 S.E.2d 386, 389 (1955) ("The wording in the [Tort Claims Act] is clear, certain and intelligible."); *Smith v. McDowell Cnty. Bd. of Educ.*, 68 N.C. App. 541, 545, 316 S.E.2d 108, 111 (1984) (concluding that "the wording in the Tort Claims Act generally . . . is clear and unambiguous").

3. *See Taylor v. Crisp*, 286 N.C. 488, 497, 212 S.E.2d 381, 387 (1975) (stating that it is logical to infer that an amendment to an unambiguous provision evinces an intent to change the law); *Childers*, 274 N.C. at 260, 162 S.E.2d at 484 ("Whereas it is logical to conclude that an amendment to an unambiguous statute indicates the intent to change the law, no such inference arises when the legislature amends an ambiguous provision."); *see also* Singer, *Statutes* § 22:30, at 369 ("[T]he time and circumstances surrounding the enactment of an amendment may indicate that the change wrought by the amendment was formal only—that the legislature intended merely to interpret the original act.").

4. Today the Tort Claims Act empowers the Industrial Commission to hear and determine claims against the State arising:

as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

N.C.G.S. § 143-291(a) (2011).

Moreover, a careful comparison of our public duty doctrine case law and the 2008 Amendment reveals that rather than clarifying the Tort Claims Act, the 2008 Amendment instituted numerous material substantive changes in the governing case law regarding the public duty doctrine. Decisions of this Court prior to the 2008 Amendment made clear that the public duty doctrine could bar negligence claims against not only law enforcement, *see, e.g., Braswelll*, 330 N.C. at 370-71, 410 S.E.2d at 901-02, but also against many State agencies under a variety of alleged circumstances, *see, e.g., Myers*, 360 N.C. at 467-68, 628 S.E.2d at 766-67 (concluding that public duty doctrine barred claims against North Carolina Division of Forest Resources, a division of the Department of Environment and Natural Resources, for failure to control a naturally occurring forest fire or failing to make safe a public highway adjacent to the fire); *Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 199, 499 S.E.2d 747, 751 (1998) (concluding that the public duty doctrine barred claims that the Department of Labor negligently inspected go-karts); *Stone v. N.C. Dep't. of Labor*, 347 N.C. 473, 482-83, 495 S.E.2d 711, 716-17 (concluding that the public duty doctrine barred claims that the Department of Labor negligently inspected a chicken processing plant), *cert. denied*, 525 U.S. 1016, 119 S. Ct. 540, 142 L. Ed. 2d 449 (1998). Likewise, our Court of Appeals expanded the public duty doctrine further, for example, by holding that it could operate to bar claims for gross negligence. *See, e.g., Little v. Atkinson*, 136 N.C. App. 430, 434, 524 S.E.2d 378, 381 (concluding that "[i]t is clear that the [public duty] doctrine bars claims of gross negligence" (citation omitted)), *cert. denied*, 351 N.C. 474, 543 S.E.2d 492 (2000).

In contrast, the 2008 Amendment materially changes the law by reducing the applicability of the public duty doctrine as an affirmative defense. In essence, the 2008 Amendment permits the State to raise this affirmative defense *"if and only if"* the claimant alleges a (1) "failure to protect the claimant from the action of others or from an act of God by a *law enforcement officer*" or (2) the negligent failure of a State agent to "perform a *health or safety inspection* required by statute." N.C.G.S. § 143-299.1A(a) (emphases added). This is a significant departure from our prior articulation of the public duty doctrine, which we broadly described as providing that "when a governmental entity owes a duty to the general public, particularly a statutory duty, individual plaintiffs may not enforce the duty in tort." *Myers*, 360 N.C. at 465-66, 628 S.E.2d at 766. The 2008 Amendment also makes clear that *gross negligence* amounting to a "failure to perform a health or safety inspection required by statute"

**RAY v. N.C. DEP'T OF TRANSP.**

[366 N.C. 1 (2012)]

will *not* be barred by the public duty doctrine. N.C.G.S. § 143-299.1A(b)(3). As explained, this was not the law of our State prior to 1 October 2008. It is thus necessary to conclude that the 2008 Amendment changed the law with respect to the public duty doctrine.

In determining whether a statutory amendment was a clarification or an alteration, we have also sought guidance in the title of the amendment. In *State ex rel. Cobey v. Simpson*, for example, we placed significant emphasis upon a title that clearly indicated a legislative intent to clarify existing legislation. 333 N.C. 81, 90, 423 S.E.2d 759, 763-64 (1992) (finding a clarification, rather than an amendatory change, when the act in question "was entitled 'An Act to Clarify the Development, Delegation, and Injunctive Relief Provisions of the Coastal Area Management Act' ").

Here, the amendment in question is captioned "An Act to Limit the Use of the Public Duty Doctrine as an Affirmative Defense for Claims Under the State Tort Claims Act in Which the Injuries of the Claimant Are the Result of the Alleged Negligent Failure of Certain Parties to Protect Claimants from the Actions of Others." Ch. 170, 2008 N.C. Sess. Laws at 690. Thus, there is no indication in this title that the legislature sought to "clarify" the Tort Claims Act by enacting the 2008 Amendment. Instead, the title of the 2008 Amendment indicates that the legislature intended to "limit" the application of the public duty doctrine. Therefore, even if I agreed with the majority that the Tort Claims Act implicitly adopted the public duty doctrine in 1951, which I do not, I would still view the 2008 Amendment as an amendatory act to be applied prospectively. A "limitation" of the public duty doctrine is a *change in the substantive law*. The legislature must have intended a material, substantive change in the public duty doctrine; otherwise, it would not have "limited" its application.

The majority opinion concerns me for a number of additional reasons. First, the majority contends that "the [2008] amendment clarifies the General Assembly's intention regarding the public duty doctrine from the time of the original enactment of the [Tort Claims Act]." But, as explained above, it is unlikely the legislature considered the public duty doctrine at all when it enacted the Tort Claims Act in 1951, over sixty years ago. It bears repeating that the public duty doctrine was not recognized in our jurisprudence until 1991. *Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 901-02. Consequently, I do not see how the 2008 Amendment clarifies the 1951 General Assembly's intent to adopt via the Tort Claims Act an affirmative defense absent from State jurisprudence until 1991.

**RAY v. N.C. DEP'T OF TRANSP.**

[366 N.C. 1 (2012)]

Second, the majority states that the public duty doctrine "exists apart from the doctrine of sovereign immunity" and apart from the State's partial waiver of sovereign immunity. Yet, the majority also claims that the public duty doctrine lay hidden in the silence of the Tort Claims Act since 1951. I do not understand how the majority reconciles these two opposing views.

Third, in concluding that the 2008 Amendment is a clarifying rather than an amending act, the majority cites to no cases factually analogous to this matter. The legislature first enacted a partial waiver of sovereign immunity in 1951. Roughly forty years later we recognized an affirmative defense limiting the tort liability of the State that had previously not been part of our common law. Nearly two decades passed and our legislature then codified this affirmative defense, adopting some appellate case law articulating the public duty doctrine, while rejecting other case law on the same issue, and narrowing the application of the doctrine considerably. The cases cited in the majority opinion merely compare two sections of legislation and do not address situations when, as here, intervening case law affects the analysis.

Finally, for the reasons set forth above, I am concerned that in an effort to preserve plaintiffs' claims, the majority stretches the doctrine of legislative clarification too far. While we may not have these plaintiffs before us again, we will certainly employ this canon of construction in the future. The next time we consider whether a legislative amendment is a clarification or an alteration to existing statutory law, and therefore determine whether a statute is to be applied retrospectively or prospectively, we will be required to contend with the majority's misapplication of a hereunto well-established canon of construction. I fear troubling unintended consequences may stem from the majority opinion.