IN THE SUPREME COURT OF NORTH CAROLINA

No. 70PA24

Filed 23 May 2025

RICHARD C. HANSON, FRED ALLEN, RICHARD BURGESS, VERNON L. CATHCART, ANGIE CATHCART, CHRISTOPHER L. DAVIS, JAMES J. FLOWERS, KENNETH C. LYNCH, LARRY F. MATKINS, THOMAS RODDEY, DARYL STURDIVANT, ALVESTER W. TUCKER, and CARLOS VALENTIN

v.

CHARLOTTE-MECKLENBURG BOARD OF EDUCATION

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 292 N.C. App. 221 (2024), affirming in part and reversing in part an order entered on 30 June 2022 by Judge Casey Viser in Superior Court, Mecklenburg County, and remanding the case. Heard in the Supreme Court on 22 April 2025.

*John W. Gresham for plaintiff-appellees.*

*Wallace Law Firm PLLC, by Terry L. Wallace, for defendant-appellant.*

PER CURIAM.

AFFIRMED.

Chief Justice NEWBY concurring.

I join the unanimous opinion of my colleagues but write separately to clarify our longstanding approach to legislative history. I believe this explanation is warranted in light of how the arguments in this case relied heavily on this statutory canon.

There are at least two kinds of legislative history. The first type consists of "[t]he proceedings leading to the enactment of a statute, including hearings, committee reports, and floor debates." *Legislative History*, *Black's Law Dictionary* (12th ed. 2024). These factors have no place in a proper statutory analysis, as numerous jurists and legal scholars have explained in great detail. *See, e.g.*, *Thompson v. Thompson*, 484 U.S. 174, 191–92, 108 S. Ct. 513, 522–23 (1988) (Scalia, J., concurring) (describing them as "frail substitutes" for the enacted text and noting the "danger[ ]" of thinking "all the necessary participants in the law-enactment process are acting upon the same unexpressed assumptions"); Kenneth W. Starr, *Observations About the Use of Legislative History*, 1987 Duke L.J. 371, 376–77 ("The most compelling and widely discussed concern about the use of legislative history is its potential for manipulation. . . . It is well known that technocrats, lobbyists[,] and attorneys have created a virtual cottage industry in fashioning legislative history so that the Congress will appear to embrace their particular view in a given statute.").

North Carolina's courts have an additional, more practical reason to avoid relying on legislative history of this sort: our General Assembly rarely records it. Accordingly, for both philosophical and practical reasons, "this Court does not look to the record of the internal deliberations of . . . the legislature considering proposed legislation." *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 202, 675 S.E.2d 641, 650 (2009) (quoting *Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 657, 403 S.E.2d 291, 295 (1991)); *see also State ex rel. N.C. Milk Comm'n v. Nat'l Food Stores, Inc.*, 270 N.C. 323, 332–33, 154 S.E.2d 548, 555 (1967) (explaining that courts may not consider "[t]estimony, even by members of the [l]egislature which adopted the statute, as to its purpose and . . . construction").

The second kind of legislative history, also known as statutory history, consists of changes that the legislature has made to the statutory text over time. We had this type of legislative history in mind when we noted less than two years ago that "the legislature's intent may be revealed from the legislative history of the statute in question, as changes the legislature makes to a statute's text over time provide evidence of the statute's intended meaning." *Wynn v. Frederick*, 385 N.C. 576, 582, 895 S.E.2d 371, 377 (2023) (citations omitted), *reh'g denied*, 896 S.E.2d 254 (N.C. 2024). The second half of that sentence is important and shows that we were referring to legislative enactments, not legislative proceedings. Courts can examine legislative enactments—to include clarifying or altering amendments—for evidence of

legislative intent without resorting to records of committee reports and floor debates.[1] *See Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012) ("A clarifying amendment, unlike an altering amendment, is one that does not change the substance of the law but instead gives further insight into the way in which the legislature intended the law to apply from its original enactment."). And of course, this second category of legislative history only exists with respect to statutes whose previously enacted words have since been altered.

Although the textual history of a statute can provide insight into legislative intent, we still disfavor its use and only turn to it in the event we exhaust both the plain text and other statutory canons. *See Wynn*, 385 N.C. at 581–82, 895 S.E.2d at 377 (looking first to the plain language, then to "the broader statutory context, the structure of the statute, and certain canons of statutory construction," before finally

---

[1] As Justice Gorsuch of the Supreme Court of the United States once explained:

> To be clear, the statutory history I [consider persuasive in this case] isn't the sort of unenacted legislative history that often is neither truly legislative (having failed to survive bicameralism and presentment) nor truly historical (consisting of advocacy aimed at winning in future litigation what couldn't be won in past statutes). Instead, I mean here the record of *enacted* changes Congress made to the relevant statutory text over time, the sort of textual evidence everyone agrees can sometimes shed light on meaning.

*BNSF Ry. Co. v. Loos*, 139 S. Ct. 893, 906 (2019) (Gorsuch, J., dissenting); *see also* Antonin Scalia & Bryan A Garner, *Reading Law: The Interpretation of Legal Texts* 256 (2012) ("[Earlier versions of the statute] form part of the context of the statute, and (unlike legislative history) can properly be presumed to have been before all members of the legislature when they voted.").

noting that "the legislature's intent may be revealed from the legislative history" (citations, quotations, and alterations omitted)); *cf. Sturdivant v. N.C. Dep't of Pub. Safety*, 386 N.C. 939, 944, 909 S.E.2d 483, 488 (2024) (quoting *Wynn*, 385 N.C. at 581, 895 S.E.2d at 377, for the proposition that ambiguous language prompts this Court to "look to other methods of statutory construction such as the broader statutory context, the structure of the statute, and certain canons of statutory construction," but omitting its reference to legislative history). In other words, this canon should be considered a last resort with limited applicability.

I respectfully concur.

Justices BERGER, BARRINGER, DIETZ, and ALLEN join in this concurring opinion.