IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-689

 No. COA21-194

 Filed 21 December 2021

 I.C. No. TA-27267

 CEDARBROOK RESIDENTIAL CENTER, INC. AND FRED LEONARD, Plaintiffs,

 v.

 N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF
 HEALTH SERVICE REGULATION, ADULT CARE LICENSURE SECTION,
 Defendant.

 Appeal by defendant from order entered 6 November 2020 by the North

 Carolina Industrial Commission (“Commission”). Heard in the Court of Appeals

 3 November 2021.

 Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Joseph A. Ponzi
 and Howard L. Williams, for plaintiffs-appellees.

 Robinson, Bradshaw & Hinson, P.A., by Adam K. Doerr and Demi Lorant
 Bostian; and North Carolina Department of Justice, by Senior Deputy Attorney
 General Amar Majmundar, for defendant-appellant.

 ARROWOOD, Judge.

¶1 The North Carolina Department of Health and Human Services (“defendant”)

 appeals from the Commission’s denial of defendant’s motion to dismiss. Defendant

 contends that the claims of Cedarbrook Residential Center Inc. and Fred Leonard
 -1-
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 (“plaintiffs”) are barred by the public duty doctrine, alternatively arguing that

 plaintiffs failed to plead a valid claim for negligence. For the following reasons, we

 affirm the Commission.

 I. Background

¶2 Plaintiffs filed an Affidavit and Verified Claim for Damages with the

 Commission on 25 October 2018. Plaintiffs asserted in the Affidavit that defendant

 had harmed plaintiffs by negligently:

 (1) conducting surveys in November 2015, March 2016,
 and July 2016; (2) issuing statements of deficiencies that
 contain [defendant’s] allegations against Cedarbrook from
 the surveys; (3) issuing a Suspension of Admissions against
 Cedarbrook on November 19, 2015 and leaving it in place
 for nearly eight months; and (4) issuing a “directed” plan of
 protection against Cedarbrook on March 18, 2016.

 On 8 January 2019, defendant filed a response and motion to dismiss pursuant to

 Rules 12(b)(1), 12(b)(2), and 12(b)(6), and a motion to stay discovery pending a ruling

 on the motion to dismiss. Deputy Commissioner James C. Gillen denied defendant’s

 motions on 13 March 2019. Defendant appealed to the Full Commission on

 27 March 2019, and Chair Philip A. Baddour, III, approved defendant’s request for

 an interlocutory appeal on 17 May 2019.

¶3 On 10 September 2019, the Commission conducted a hearing on defendant’s

 appeal. On 6 November 2020, the Commission filed an order affirming the denial of

 defendant’s motions to dismiss. Defendant filed notice of appeal on 4 December 2020.
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 II. Discussion

¶4 Defendant presents the following arguments: the Commission erred in

 denying defendant’s motion to dismiss because the Tort Claims Act does not apply;

 the public duty doctrine bars plaintiffs’ claims; plaintiffs failed to plead a valid claim

 for negligence; and allowing plaintiffs’ claim “would endanger North Carolina

 citizens.” We address each argument in turn.

 A. Appellate Jurisdiction and Standard of Review

¶5 The denial of a motion to dismiss is an interlocutory order which is not

 immediately appealable unless that denial affects a substantial right of the appellant.

 RPR & Assocs., Inc. v. State, 139 N.C. App. 525, 527, 534 S.E.2d 247, 249-50 (2000),

 aff’d per curiam, 353 N.C. 362, 543 S.E.2d 480 (2001); see also N.C. Gen. Stat. § 7A-

 27(b) (2019). “[T]he denial of a motion to dismiss based upon the defense of sovereign

 immunity affects a substantial right and is thus immediately appealable.” RPR &

 Assocs., Inc., 139 N.C. App. at 527, 534 S.E.2d at 250 (citations omitted).

¶6 In this case, defendant’s motion to dismiss is based in part upon the defense of

 sovereign immunity. Because the trial court’s denial of defendant’s motion to dismiss

 affects a substantial right, we hold that defendant’s appeal is properly before this

 Court.

¶7 We review the denial of a motion to dismiss on the basis of sovereign immunity

 de novo. White v. Trew, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013).
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 The standard of review for an appeal from the Full
 Commission’s decision under the Tort Claims Act “shall be
 for errors of law only under the same terms and conditions
 as govern appeals in ordinary civil actions, and the findings
 of fact of the Commission shall be conclusive if there is any
 competent evidence to support them.”

 Simmons v. Columbus County Bd. of Educ., 171 N.C. App. 725, 727, 615 S.E.2d 69,

 72 (2005) (quoting N.C. Gen. Stat. § 143-293 (2003)). “Thus, ‘when considering an

 appeal from the Commission, our Court is limited to two questions: (1) whether

 competent evidence exists to support the Commission’s findings of fact, and (2)

 whether the Commission’s findings of fact justify its conclusions of law and decision.’ ”

 Id. at 728, 615 S.E.2d at 72 (quoting Simmons v. N.C. Dep’t of Transp., 128 N.C. App.

 402, 405-406, 496 S.E.2d 790, 793 (1998)).

¶8 Additionally, when reviewing a motion to dismiss for lack of subject matter

 jurisdiction and failure to state a claim upon which relief can be granted, this Court

 treats plaintiffs’ “factual allegations contained in [their] affidavit before the

 Industrial Commission as true.” Hunt v. N.C. Dep’t of Lab., 348 N.C. 192, 194, 499

 S.E.2d 747, 748 (1998) (citation omitted).

 B. Tort Claims Act and Sovereign Immunity

¶9 Defendant first argues that the State Tort Claims Act (“STCA”) does not apply

 because plaintiffs cannot sue defendant like a “private person.” We disagree.
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

¶ 10 An action cannot be maintained against the State of North Carolina or a state

 agency unless the State consents to be sued or upon its waiver of immunity; this

 immunity is absolute and unqualified. Guthrie v. N.C. State Ports Auth., 307 N.C.

 522, 534, 299 S.E.2d 618, 625 (1983) (citations omitted).

¶ 11 The STCA provides a limited waiver of sovereign immunity for the

 negligence of any officer, employee, involuntary servant or
 agent of the State while acting within the scope of his office,
 employment, service, agency or authority, under
 circumstances where the State of North Carolina, if a
 private person, would be liable to the claimant in
 accordance with the laws of North Carolina.

 Ray v. N.C. Dep’t of Transp., 366 N.C. 1, 4, 727 S.E.2d 675, 678 (2012) (quoting N.C.

 Gen. Stat. § 143-291 (2011)). “No formal pleadings are required to invoke the

 jurisdiction of the Industrial Commission under the State Tort Claims Act.” Zimmer

 v. N.C. Dep’t of Transp., 87 N.C. App. 132, 135, 360 S.E.2d 115, 117 (1987) (citing

 Branch Banking & Trust Co. v. Wilson County Bd. of Educ., 251 N.C. 603, 111 S.E.2d

 844 (1960)). The only requirement is that the claimant file with the Commission an

 affidavit in duplicate, containing the following information:

 (1) The name of the claimant;

 (2) The name of the department, institution or agency of
 the State against which the claim is asserted, and the
 name of the State employee upon whose alleged
 negligence the claim is based;

 (3) The amount of damages sought to be recovered;
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 (4) The time and place where the injury occurred;

 (5) A brief statement of the facts and circumstances
 surrounding the injury and giving rise to the claim.

 N.C. Gen. Stat. § 143-297 (2019). Plaintiffs have filed an affidavit in compliance with

 these requirements.

¶ 12 Defendant argues that the STCA does not apply in this case because “[p]rivate

 persons cannot be held liable for regulatory actions[,]” and accordingly “state agencies

 cannot be held liable for the same.” This argument misconstrues the meaning of

 “private person” under the STCA. Although defendant contends the STCA only

 applies to situations where a private person may also be liable, this Court has held

 that the STCA “will be construed so as to effectuate its purpose of waiving sovereign

 immunity so that a person injured by the negligence of a State employee may sue the

 State as he would any other person.” Zimmer, 87 N.C. App. at 136, 360 S.E.2d at

 117-18 (citation omitted). Accordingly, the “private person” language within the

 STCA pertains to the nature of the proceedings but does not operate to bar waiver of

 sovereign immunity. Defendant’s argument fails to acknowledge that many cases

 presented to the Commission and to this Court on appeal involve regulatory action.

¶ 13 Defendant also contends the STCA does not apply because “[t]he statutes

 regulating adult care homes expressly provide for challenges of penalties and

 suspensions under the Administrative Procedure Act.” Defendant argues that
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 allowing this claim amounts to an impermissible “end-run around” the process the

 General Assembly established for challenges to regulatory action. Defendant cites

 N.C. Gen. Stat. §§ 131D-2.7(d)(4) and 131D-34(e) to support its argument.

¶ 14 Although the General Assembly has provided several remedies under the

 Administrative Procedures Act, the availability of an administrative remedy does not

 preclude plaintiff from seeking a remedy under the STCA. This Court recently held

 that an entity regulated by defendant had an adequate state remedy under the STCA.

 Nanny’s Korner Day Care Ctr., Inc. v. N.C. Dep’t of Health & Hum. Servs., 264 N.C.

 App. 71, 80, 825 S.E.2d 34, 41, appeal dismissed, review denied sub nom., Nanny’s

 Korner Day Care Ctr., Inc. v. N.C. Dep’t of Health & Hum. Servs., Div. of Child Dev.

 & Early Educ., 831 S.E.2d 89 (N.C. 2019).

¶ 15 In Nanny’s Korner, DHHS took regulatory action against a daycare center and

 required the center to notify its customers of an allegation of sexual abuse, resulting

 in loss of business and the daycare center’s closure. Id. at 73-75, 825 S.E.2d at 37-38.

 The daycare center brought a claim against DHHS under the STCA, which was

 dismissed because the statute of limitations had run. Id. at 79, 825 S.E.2d at 40.

 While addressing a constitutional procedural due process claim, this Court held that

 the plaintiff did not have the right to bring a direct constitutional claim because

 plaintiff “had an adequate state remedy in the form of the Industrial Commission

 through the Torts Claim Act.” Id. at 80, 825 S.E.2d at 41.
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

¶ 16 “Where a panel of the Court of Appeals has decided the same issue, albeit in a

 different case, a subsequent panel of the same court is bound by that precedent,

 unless it has been overturned by a higher court.” In re Civil Penalty, 324 N.C. 373,

 384, 379 S.E.2d 30, 37 (1989) (citation omitted). The issue in this case—whether a

 regulated entity has a state remedy under the STCA—has already been decided by

 this Court in Nanny’s Korner, and that decision has not been overturned by a higher

 court. Accordingly, we are bound by this precedent and hold that plaintiffs were not

 barred from bringing a claim under the STCA.

 C. Public Duty Doctrine

¶ 17 Defendant further contends that plaintiffs’ claims are barred by the public duty

 doctrine. We disagree.

¶ 18 The public duty doctrine is a common law negligence doctrine existing apart

 from the doctrine of sovereign immunity. Myers v. McGrady, 360 N.C. 460, 465, 628

 S.E.2d 761, 766 (2006). The STCA did not specifically address the public duty

 doctrine when it was originally enacted. Our Supreme Court first recognized the

 public duty doctrine in Braswell v. Braswell, 330 N.C. 363, 370, 410 S.E.2d 897, 901

 (1991) (“The general common law rule, known as the public duty doctrine, is that a

 municipality and its agents act for the benefit of the public, and therefore, there is no

 liability for the failure to furnish police protection to specific individuals.”). Later

 cases expanded the applicability of the public duty doctrine to governmental functions
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 other than law enforcement. See Stone v. N.C. Dep’t of Labor, 347 N.C. 473, 495

 S.E.2d 711 (1998) (alleged negligent failure to inspect chicken processing facility);

 Hunt, 348 N.C. 192, 499 S.E.2d 747 (alleged negligent inspection of go-kart seatbelt

 at amusement park); Myers, 360 N.C. 460, 628 S.E.2d 761 (alleged negligent

 management of forest fires). Two exceptions were recognized:

 (i) where there is a special relationship between the injured
 party and the governmental entity (“special relationship”)
 and (ii) when the governmental entity creates a special
 duty by promising protection to an individual, the
 protection is not forthcoming, and the individual’s reliance
 on the promise of protection is causally related to the injury
 suffered (“special duty”).

 Hunt, 348 N.C. at 197, 499 S.E.2d at 750 (citing Braswell, 330 N.C. at 371, 410 S.E.2d

 at 902).

¶ 19 In 2008, the General Assembly added N.C. Gen. Stat. § 143-299.1A to the

 STCA, which provides in pertinent part:

 (a) Except as provided in subsection (b) of this section, the
 public duty doctrine is an affirmative defense on the
 part of the State department, institution, or agency
 against which a claim is asserted if and only if the
 injury of the claimant is the result of any of the
 following:

 (1) The alleged negligent failure to protect the claimant
 from the action of others or from an act of God by a
 law enforcement officer as defined in subsection (d)
 of this section.

 (2) The alleged negligent failure of an officer, employee,
 involuntary servant or agent of the State to perform
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 a health or safety inspection required by statute.

 (b) Notwithstanding subsection (a) of this section, the
 affirmative defense of the public duty doctrine may not
 be asserted in any of the following instances:

 (1) Where there is a special relationship between the
 claimant and the officer, employee, involuntary
 servant or agent of the State.

 (2) When the State, through its officers, employees,
 involuntary servants or agents, has created a special
 duty owed to the claimant and the claimant’s
 reliance on that duty is causally related to the injury
 suffered by the claimant.

 (3) Where the alleged failure to perform a health or
 safety inspection required by statute was the result
 of gross negligence.

 N.C. Gen. Stat. § 143-299.1A (2019).

¶ 20 Our Supreme Court addressed this amendment in Ray v. N.C. Dep’t of Transp.,

 366 N.C. 1, 727 S.E.2d 675 (2012). The Ray Court noted that the statute

 “incorporated much of our public duty doctrine case law.” Id. at 7, 727 S.E.2d at 680

 (“Subdivision 143-299.1A(a)(1) includes the Braswell holding for law enforcement

 officers. Subdivision 143-299.1A(a)(2) aligns with Stone’s holding that there is no

 liability for negligent failure to inspect under the public duty doctrine. Finally,

 subdivisions 143-299.1A(b)(1) and (b)(2) codify the exceptions to the public duty

 doctrine we have recognized since our first acknowledgment of the doctrine.”

 (citations omitted)). The Court also acknowledged the General Assembly “made clear
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 that the doctrine is to be a more limited one than the common law might have led us

 to understand.” Id. Accordingly, the Court determined that:

 By the plain language of the statute, the public duty
 doctrine is a defense only if the injury alleged is the result
 of (1) a law enforcement officer’s negligent failure to protect
 the plaintiff from actions of others or an act of God, or (2) a
 State officer’s, employee’s, involuntary servant’s, or agent’s
 negligent failure to perform a health or safety inspection
 required by statute. . . . In all other cases the public duty
 doctrine is unavailable to the State as a defense.

 Id. at 8, 727 S.E.2d at 680-81 (emphasis added).

¶ 21 Upon concluding that the statute limits the use of the public duty doctrine as

 an affirmative defense, the Court determined that the statute was a clarifying

 amendment, reasoning that the General Assembly reacted to “a topic that it had not

 previously addressed and stating that, while our Court had largely properly applied

 the doctrine, the doctrine is to be a limited one[,]” which “indicate[d] that the General

 Assembly intended to clarify the role of the public duty doctrine in the STCA with

 N.C. [Gen. Stat.] § 143-299.1A.” Id. at 12, 727 S.E.2d at 683.

¶ 22 Defendant argues that the public duty doctrine applies to allegedly negligent

 inspections, citing our Supreme Court’s holding in Hunt which applied the public duty

 doctrine to negligent inspection of seat belts. Defendant also emphasizes the portion

 of Ray holding that the amendment is clarifying to support the argument that Hunt

 is still controlling. Although defendant is correct that the amendment was held to be
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 a clarifying one and Ray did not explicitly overrule prior precedent, defendant fails to

 acknowledge the plain language of the statute and Ray’s application of the statute.

¶ 23 The statute provides that the public duty doctrine is available as an affirmative

 defense “if and only if the injury of the claimant is the result of . . . [t]he alleged

 negligent failure of an officer, employee, involuntary servant or agent of the State to

 perform a health or safety inspection required by statute.” N.C. Gen. Stat. § 143-

 299.1A(a)(2) (emphasis added). In Ray, the Court held that the plaintiffs’ claims for

 “negligent ‘design and execution’ of the narrowing of [a roadway] from three lanes to

 two,” and “negligent failure to repair” were not barred by the public duty doctrine

 because “[n]either claim is for negligent failure to inspect pursuant to a statute[.]”

 Ray, 366 N.C. at 12, 727 S.E.2d at 683. In the case sub judice, plaintiffs’ claim is

 based on allegedly negligent licensure actions taken after a series of inspections.

 Plaintiffs’ claim is not for the alleged negligent failure to perform a health or safety

 inspection. Accordingly, by applying the plain language of the statute and our

 Supreme Court’s holding in Ray, we hold that plaintiffs’ claim is not barred by the

 public duty doctrine.

 D. Negligence Claim

¶ 24 Defendant contends that plaintiffs’ allegations are not sufficient to state a

 cause of action because “[t]here is no legal basis for the claim that DHHS owes a duty

 to the owners or operators of the adult care homes it inspects and licenses.”
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 Defendant also asserts that the “intentional, discretionary acts taken pursuant to

 regulatory authority do not give rise to a tort claim.”

¶ 25 Defendant’s argument is intertwined with its interpretation of the public duty

 doctrine. Although an inquiry into a statutory duty to the public was central to our

 Supreme Court’s precedent prior to the 2008 amendment, our Supreme Court’s

 application of the amendment in Ray is clear that the General Assembly intended to

 limit the public duty doctrine and that our Courts should apply the plain language of

 the statute. As we have held that the public duty doctrine does not bar plaintiffs’

 claim, defendant’s argument that plaintiffs have failed to state a cause of action is

 overruled.

¶ 26 Additionally, defendant’s argument that it should not be held liable for acting

 intentionally pursuant to authority granted by the General Assembly “overlooks the

 fact that the focus is not on whether [defendant’s] actions were intentional, by rather

 on whether [they] intended to injure or damage the [plaintiffs].” See Crump v. N.C.

 Dep’t of Env’t & Nat. Res., 216 N.C. App. 39, 44-45, 715 S.E.2d 875, 880 (2011).

 The term “willful negligence” has been defined as the
 intentional failure to carry out some duty imposed by law
 or contract which is necessary to the safety of the person or
 property to which it is owed. A breach of duty may be
 willful while the resulting injury is still negligent. Only
 when the injury is intentional does the concept of
 negligence cease to play a part.
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 Pleasant v. Johnson, 312 N.C. 710, 714, 325 S.E.2d 244, 248 (1985) (internal citations

 omitted). In order for defendant’s argument to succeed, a showing that defendant’s

 employees intended to cause harm to plaintiffs would be required. Nothing in the

 record in this case, nor the parties’ briefs, suggest that defendant intended to cause

 plaintiffs’ injuries. Accordingly, defendant’s argument that it should not be held

 liable for intentional acts is overruled.

¶ 27 The dissent expresses concern that under this holding, defendant and other

 state regulatory agencies will be held “in an impossible standard” liable for both

 enforcing and failing to enforce statutory mandates. The dissent cites in comparison

 our recent opinion in Tang v. N.C. Dep’t of Health and Hum. Servs., 2021-NCCOA-

 611 (unpublished).

¶ 28 In Tang, we affirmed the Commission’s finding that defendant had breached

 its duty by failing to take appropriate regulatory action. Id. ¶ 1. The adult care

 facility at issue in Tang housed a number of residents known to be disoriented or with

 other mental health conditions, and the facility did not have any functioning door

 alarms to alert staff if residents left the facility unattended. Id. ¶ 4. Although

 defendant was aware that the facility was not equipped with adequate exit alarms,

 defendant failed to assess appropriate violations or require appropriate corrective

 measures. Id. ¶¶ 5-6. Before the facility took any corrective action, an adult care

 resident eloped and was later found dead in a nearby area. Id. ¶¶ 8-11.
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

¶ 29 The dissent argues that defendant is now squeezed into an impossible

 predicament between Tang and this opinion and will be held liable regardless of what

 actions are taken. The dissent’s concerns are misplaced for several reasons. First,

 Tang is factually distinguishable from this case. In Tang, it was established that the

 conditions actually posed a serious risk of harm to adult care facility residents, that

 defendant knew or should have known of the conditions, and that defendant failed to

 take appropriate regulatory action (i.e., assessing a Type A violation). Id. ¶ 13. In

 this case, taking the factual allegations in plaintiff’s affidavit as true (as we are

 required to do at this stage of the litigation), the conditions did not actually pose a

 serious risk of harm, but defendant took the most extreme regulatory action available

 (i.e., multiple Type A violations and a suspension of admissions). Although the

 dissent characterizes this as an impossible predicament where defendant will always

 be liable, these cases simply present examples where defendant failed to exercise

 reasonable care in fulfilling its statutory duties.

 E. Public Policy

¶ 30 Defendant finally argues that allowing tort claims for regulatory actions would

 endanger North Carolina citizens and “unleash a flood of litigation.” In so arguing,

 defendant warns that allowing a regulated entity to bring a tort claim “could dissuade

 regulators from performing their statutorily mandated duty to protect residents.”
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

¶ 31 “North Carolina courts have recognized the jurisdiction of the Industrial

 Commission to determine whether discretionary acts performed by employees or

 agents of the State were negligent and whether they proximately caused injury to a

 claimant.” Zimmer, 87 N.C. App. at 136, 360 S.E.2d at 118 (citations omitted). Our

 Courts have repeatedly affirmed the Commission’s authority to make determinations

 of negligence where a party alleges harm caused by an agency’s regulatory actions.

 We are not persuaded by defendant’s concern that affirming the Commission here

 will encourage regulators to abandon their statutorily mandated duties. Our holding

 does not add or subtract any duties to which defendant or its employees were already

 bound to.

¶ 32 More importantly, our General Assembly “is without question the policy-

 making agency of our government, and when it elects to legislate in respect to the

 subject matter of any common law rule, the statute supplants the common law rule

 and becomes the public policy of the State in respect to that particular matter.” Rhyne

 v. K-Mart Corp., 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004) (citation and quotation

 marks omitted). Here, our General Assembly chose to legislate with respect to the

 public duty doctrine, and the statute has become “the public policy of the State” with

 respect to the availability of the public duty doctrine as an affirmative defense.

 Defendant’s public policy concerns would be more appropriately directed to the
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Opinion of the Court

 General Assembly, particularly in this case where the General Assembly limited the

 applicability of the public duty doctrine through legislative action.

 III. Conclusion

¶ 33 For the foregoing reasons, we affirm the Commission’s order denying

 defendant’s motion to dismiss.

 AFFIRMED.

 Judge DIETZ concurs by separate opinion.

 Judge TYSON dissents by separate opinion.
 No. COA21-194 – Cedarbrook Residential Ctr., Inc. v. N.C. Dep’t of Health & Hum.
 Servs.

 DIETZ, Judge, concurring.

¶ 34 State regulators are not angels. They are people, like all the rest of us. And,

 like everyone else, they owe a duty when they act to exercise ordinary care to protect

 others from foreseeable harm. Fussell v. N. Carolina Farm Bureau Mut. Ins. Co., 364

 N.C. 222, 226, 695 S.E.2d 437, 440 (2010). But the State has a power the rest of us do

 not; the State can cloak itself in sovereign immunity to avoid being sued when its own

 employees breach this universal duty of care that the law imposes on us all.

¶ 35 Several years ago, this Court held that, when State regulators act negligently

 in the performance of their regulatory duties, the State had opted to treat itself like

 everyone else. Nanny’s Korner Day Care Ctr., Inc. v. N. Carolina Dep’t of Health &

 Hum. Servs., 264 N.C. App. 71, 80, 825 S.E.2d 34, 41 (2019). The State did so, this

 Court reasoned, through the State Tort Claims Act, which permitted the plaintiff in

 Nanny’s Korner to sue a State agency (the same agency sued in this case) for the

 negligence of its regulators. Id. To be sure, the Industrial Commission dismissed that

 negligence claim as barred by the applicable statute of limitations, but this Court

 held that the claim, had it been timely filed, could have been pursued under the State

 Tort Claims Act. Id.

¶ 36 That decision is still good law and we are bound by it. My dissenting colleague

 strains to avoid Nanny’s Korner’s holding by asserting that this Court’s “dismissal
 - 18 -
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 DIETZ, J., concurring

 was the ratio decidendi and the end of our appellate mandate,” leaving the rest of the

 Court’s analysis as unbinding “obiter dicta.” This is nonsense. It is this Court’s

 holding that binds us, not merely the mandate or disposition, and we held in Nanny’s

 Korner that the plaintiff’s constitutional claim was barred because the plaintiff “had

 an adequate state remedy in the form of the Industrial Commission through the Torts

 Claim Act.” Id.

¶ 37 The dissent also points to a number of policy reasons for rejecting Nanny’s

 Korner—a potential “stampede” of lawsuits against the State; the availability of relief

 through the APA; the State’s allegations (all of which remain unproven) that

 Cedarbrook operated a substandard residential care home.

¶ 38 These policy considerations might be reasons for our Supreme Court to exercise

 its discretion to take this case and examine the holding in Nanny’s Korner—

 something our State’s high court chose not to do when Nanny’s Korner was first

 decided. But they are not reasons for a Court of Appeals judge to dissent. See State v.

 Miller, 275 N.C. App. 843, 851, 852 S.E.2d 704, 711 (2020). I will faithfully adhere to

 our responsibility to follow controlling precedent and leave it to our Supreme Court

 to determine if that precedent should change.
 No. COA 21-194 – Cedarbrook Residential Ctr., Inc. v. N.C. Dep’t of Health & Hum.
 Servs.

 TYSON, Judge, dissenting.

¶ 39 Plaintiffs failed to show any legal duty owed or breach thereof, or proximate

 cause in their putative negligence action. Claims challenging an agency’s regulatory

 actions are properly heard under the North Carolina Administrative Procedures Act

 (“NCAPA”). The plurality opinion’s conclusion will lead to a stampede of

 nonjusticiable suits against regulatory state agencies which are clearly barred by

 sovereign immunity except for the limited waiver of that immunity under the State

 Tort Claims Act (“STCA”).

¶ 40 The Industrial Commission cannot waive North Carolina’s sovereign

 immunity under the STCA. The Commission has no statutory mandate or

 jurisdiction to sit in judgment of the reasonableness of other state agencies enforcing

 that agency’s regulatory mandates when the agency’s duty is such that no “private

 person” can perform under the STCA.

¶ 41 That regulatory review function is clearly assigned under the NCAPA to the

 Office of Administrative Hearings (“OAH”). The plurality’s opinion erroneously

 affirms the Commissioner’s order denying defendant’s motion to dismiss. I vote to

 reverse, remand for dismissal, and respectfully dissent.

 I. Background

¶ 42 Defendant documented the gross violations and issues it found at Cedarbrook’s
 - 20 -
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 senior living facility in its “Statements of Deficiencies,” a comprehensive investigative

 report which exceeded 400 pages. The regulatory findings included documented

 deficiencies in: (1) supervision issues, where a Cedarbrook resident was found near I-

 40, five miles away from Cedarbrook’s facility; (2) reports of residents involved in

 prostitution and sexual acts in exchange for sodas from the commissary, which

 plaintiff claims were all consensual activities; and, (3) cockroach infestations, among

 many other things.

¶ 43 In November 2015, defendant issued proposed penalties and suspended

 Cedarbrook from admitting new residents. Plaintiff challenged these regulatory

 actions in proceedings before the OAH in 2016. Plaintiff and defendant reached an

 agreement to settle the matter prior to hearing before an administrative law judge.

 As a result of the settlement, defendant agreed to dismiss the citations. Plaintiff does

 not challenge the factual basis for allegations in the Statement of Deficiencies, but

 offers alternative reasons, explanations, and excuses for these documented events

 and deficiencies at its facility.

 II. Issue

¶ 44 Defendant argues the Commission erred in refusing to dismiss plaintiff’s

 claims as barred by the State’s sovereign immunity; and by effectively recognizing a

 cognizable claim for purported “negligent regulation” to permit an entity or

 individual, which is regulated by the State, to sue the state regulator, agency, and
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 ultimately the taxpayers of North Carolina under general tort law under the STCA

 before the Industrial Commission.

 III. Standard of Review

¶ 45 “[W]e review the trial court’s denial of defendant’s motion to dismiss de novo.”

 White v. Trew, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013) (emphasis supplied).

 IV. Analysis

 A. Sovereign Immunity

¶ 46 The General Assembly instituted public policy and statutorily charged

 defendant with licensing and inspecting adult care homes and facilities. It also

 mandated defendant to enforce statutes and regulations to achieve these goals and

 uphold the rights of captive and vulnerable residents. See N.C. Gen. Stat § 131D-2.4

 (2019) (Defendant “shall inspect and license all adult care homes.”). The statute

 requires defendant to impose penalties on adult care homes and facilities when and

 if their inspections reveal violations of state law, regulations, or violations of the

 residents’ rights. N.C. Gen. Stat. § 131D-4.4(d) (2019).

¶ 47 Our Supreme Court held, “[i]t has long been established that an action cannot

 be maintained against [a state agency] unless it consents to be sued or upon its waiver

 of immunity, and that this immunity is absolute and unqualified.” Guthrie v. N.C.

 State Ports Auth., 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983) (citations omitted).

 Defendant maintains “absolute and unqualified” sovereign immunity from suit in
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 enforcing this statute as a state agency. Id. This immunity is absolute under common

 law, is the status quo unless waived, bars statutory claims, and compels dismissal.

 See id.

¶ 48 Plaintiff can only overcome “absolute and unqualified” sovereign immunity by

 showing the State waived its immunity and consented to be sued. Id. Again, our

 Supreme Court confirmed the General Assembly’s public policy in Guthrie, “[t]he

 State is immune from suit unless and until it has expressly consented to be sued.” Id.

 (citation omitted). If a plaintiff cannot demonstrate waiver of immunity and consent,

 its claim fails and it must be dismissed. Vest v. Easley, 145 N.C. App. 70, 74, 549

 S.E.2d 568, 573 (2001).

 B. Tort Claims Act

¶ 49 The STCA is an expressly limited statutory waiver of the State’s sovereign

 immunity by the General Assembly. It permits only claims arising “as a result of the

 negligence of any . . . employee . . . of the State while acting within the scope of his

 office, employment, service, agency or authority, under circumstances where the

 State of North Carolina, if a private person, would be liable to the claimant in

 accordance with the laws of North Carolina.” N.C. Gen. Stat. § 143-291(a) (2019)

 (emphasis supplied).

¶ 50 Pursuant to the STCA, “negligence is determined by the same rules as those

 applicable to private parties.” Bolkhir v. N.C. State Univ., 321 N.C. 706, 709, 365
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 S.E.2d 898, 900 (1988) (citation omitted). “To establish actionable negligence,

 plaintiff must show that: (1) defendant failed to exercise due care in the performance

 of some legal duty owed to plaintiff under the circumstances; and (2) the negligent

 breach of such duty was the proximate cause of the injury.” Id.

¶ 51 The party asserting a claim must establish cause. Proximate cause is “a cause

 which in natural and continuous sequence, unbroken by any new and independent

 cause, produced the plaintiff’s injuries, and without which the injuries would not have

 occurred,” and that it could be reasonably foreseen and probable under the

 circumstances. Id. at 710, 365 S.E.2d at 901 (citation omitted).

¶ 52 The Commission concluded plaintiff’s allegations “compl[y] with the

 requirements of the Tort Claims Act” because plaintiff filed a complaint and listed

 employees whose conduct was allegedly negligent. This holding expressly contradicts

 the plain language of the statute, upends the General Assembly’s comprehensive and

 long-established administrative statute and procedures to challenge regulatory

 action, which provides an adequate state remedy.

¶ 53 The Commission’s denial of defendant’s motion to dismiss creates

 unprecedented and untenable liability for the citizens and taxpayers of this State.

 Further, STCA only permits parties to sue the State “where the State of North

 Carolina, if a private person, would be liable[.]” N.C. Gen. Stat. § 143-291(a).

 (emphasis supplied). This inclusion of “if a private person” clause is a substantive
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 statutory limiting requirement. See Frazier v. Murray, 135 N.C. App. 43, 48, 519

 S.E.2d 525, 529 (1999) (“Tort liability for negligence attaches to the state and its

 agencies under the Tort Claims Act only where the State [], if a private person, would

 be liable to the claimant.” (citation omitted)).

¶ 54 Plaintiff’s allegations are wholly based on regulatory actions and sanctions

 defendant cited plaintiff for violating and which it has not denied. No “private

 person” has any right or authority to perform these exclusively state regulatory

 actions or to inspect or sanction a licensee for violations of laws and regulations. N.C.

 Gen. Stat. § 131D-2.4.

¶ 55 According to the Order, plaintiff asserts “[defendant] breached its ‘duty of

 reasonable care in the exercise of its authority to investigate the facility and take

 licensure actions’ and . . . negligently issued statements of deficiencies.”

¶ 56 The STCA waives sovereign immunity only when an asserted:

 negligence of any officer, employee, involuntary servant or
 agent of the State while acting within the scope of his office,
 employment, service, agency or authority, under
 circumstances where the State of North Carolina, if a
 private person, would be liable to the claimant in
 accordance with the laws of North Carolina.

 Ray v. N.C. Dep’t of Transp., 366 N.C. 1, 4, 727 S.E.2d 675, 678 (2012) (quoting N.C.

 Gen. Stat. § 143-291 (2011)).

¶ 57 Plaintiff has failed to establish a duty that any reasonable “private person”
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 owed to them. Further, plaintiff has failed to allege that any state actor acted as an

 unreasonable person in breach of that putative duty during the course of their

 mandatory regulatory investigation and sanctions.

 C. DHHS’ Duties

¶ 58 This Court recently affirmed the Commission’s conclusion that defendant

 DHHS breached a duty owed and proximately caused an elderly resident’s

 disappearance and ultimately her death. Tang v. N.C. Dep’t of Health and Hum.

 Servs, __ N.C. App. __, 2021-NCCOA-611 ¶ 3, 2021 WL 5071898 (unpublished). In

 Tang, DHHS, as here, was responsible for performing regulatory investigations for

 an adult care living facility (“Unique Living”). Upon an investigation, and after a

 regulatory inspection of Unique Living, DHHS issued several violations. Id. at *1, ¶

 4. One of the many citations pertained to a faulty door alarm system, which was

 specifically installed to notify staff if a patient left the facility without an attendant.

 Id. at *2, ¶ 5. The DHHS employee told Unique Living management that no licensure

 action would be taken at that time because no serious non-compliance consequences

 had arisen. Id. at *2, ¶ 6.

¶ 59 Ms. Tang, an elderly resident of Unique Living, required increased monitoring.

 She walked out of Unique Living unattended, just days after these alarm door

 violations were reported. Id. at *2, ¶ 8. Within a week, Unique Living’s license was

 suspended, and the facility was closed. Id. at *2, ¶ 9. Ms. Tang was officially declared
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 deceased years later in 2014. Id. at *2, ¶ 11.

 The Commission found that [DHHS] had a duty to Ms.
 Tang pursuant to N.C. Gen. Stat. § 131D-2 et. seq., which
 was “to license and periodically inspect adult care homes
 like Unique Living and to take reasonable steps to ensure
 that the conditions at those facilities did not place
 residents at substantial risk of serious death or harm.”
 Based on the evidence, the Commission found that
 “[DHHS] had the ability and the regulatory authority to
 take action against Unique Living to prevent harm to its
 residents but failed to do so.”

 ....

 The Commission concluded that defendant breached its
 duty “by failing to take appropriate regulatory action to
 ensure immediate correction of the conditions that existed
 at Unique Living in July 2008[,]” specifically the “wholly
 inadequate supervision of residents[.]” The Commission
 concluded that this breach was a proximate cause of Ms.
 Tang’s disappearance and death, because if [DHHS] had
 taken appropriate regulatory action to ensure the
 conditions at Unique Living were corrected immediately,
 Ms. Tang “would not have been able to leave the facility
 unnoticed.”

 Id. at *3, ¶ 16-17 (emphasis supplied).

¶ 60 In Tang, the Commission held DHHS liable and ordered them to pay Ms.

 Tang’s estate $500,000.00 in damages. Id. at *2-3, ¶¶ 13, 15-16. This Court affirmed

 the Commission’s finding and conclusion, holding DHHS had breached their duty “by

 failing to take appropriate regulatory action to ensure immediate correction of the

 conditions.” Id. at *3, ¶ 28.
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

¶ 61 Here, among other infractions and as with the Type A violations in Tang,

 DHHS alleged that an elderly resident from Cedarbrook had wandered from the

 facility without notice to or accompanied by the staff. Fortunately, the elderly

 resident was found alive five miles away from plaintiff’s facility near the Interstate

 highway.

¶ 62 Plaintiff must show duty, breach thereof, causation and damage. Parker v.

 Town of Erwin, 243 N.C. App. 84, 110, 776 S.E.2d 710, 729-30 (2015). Plaintiff has

 not shown a duty not to “negligently regulate” was owed, nor have they shown that

 duty was breached, and asserted no supported allegation the purported breach was

 the proximate cause of their harm. DHHS, and quantitatively North Carolina

 taxpayers, became encumbered by a hefty fine in Tang because the agency’s duty and

 breach to the deceased resident were purportedly shown. DHHS was held responsible

 for their failure to act within the authority given them to enforce the regulatory

 investigations and violations found therein to protect an elderly resident from

 wandering alone.

¶ 63 Here, DHHS did the opposite to meet its statutory mandates. DHHS cited the

 violations and acted promptly to ensure the vulnerable residents were protected and

 the violations were quickly addressed. As was asserted by counsel for DHHS at oral

 arguments, if DHHS is liable in Tang when they do not enforce regulatory sanctions

 and then, under the plurality’s analysis, are also liable when they do enforce for the
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 same conduct, how can DHHS comply with their statutory mandate to conduct

 regulatory investigations to protect vulnerable residents at all?

¶ 64 If DHHS enforces the statutory mandates “too” properly, but later settles the

 issues prior to hearing before the OAH then the agency will be subject to suit by a

 myriad of plaintiffs.

¶ 65 Plaintiff allowed these deficiencies in their facilities and procedures to exist,

 brought an administrative challenge to the Statement of Deficiencies, which was

 settled prior to hearing before the ALJ. Plaintiff failed to allege the elements of

 negligence to state a claim that is cognizable under the STCA.

¶ 66 Under the logic of Tang and the plurality’s opinion, and as DHHS argued

 during oral arguments, they and all state regulatory agencies would be held in an

 impossible standard (1) liable for enforcing the statutory mandates; and, (2) also

 liable for failing to enforce those very same mandates with the Industrial Commission

 sitting in judgment of their “reasonableness.” The limited waiver of sovereign

 immunity under the STCA simply does not recognize or permit plaintiff’s claim,

 which is properly dismissed.

 V. Adequate State Remedy

¶ 67 The plurality and concurring opinions cite Nanny’s Korner Day Care Ctr., Inc.

 v. N. C. Dep’t of Health and Human Servs., 264 N.C. App. 71, 825 S.E.2d 34 (2019),

 and assert it is controlling precedent and binds us to uphold the Industrial
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 Commission’s failure to dismiss in our present case.

¶ 68 In Nanny’s Korner, the plaintiff suffered loss of clients and eventually closed

 after DHHS filed reports alleging sexual abuse of children in the day care center and

 required the plaintiff to notify other parents. Id. at 75, 825 S.E.2d at 38. This Court

 dismissed plaintiff’s expired claim and held, “Plaintiff does not have a direct

 constitutional claim against the State under the North Carolina Constitution.” Id. at

 80, 825 S.E.2d at 41.

¶ 69 This Court affirmed the Industrial Commission’s dismissal of the plaintiff’s

 claim. Id. Affirming that dismissal was the ratio decidendi and ended our appellate

 review and mandate. Any further notion, asserted by the plurality’s opinion

 purporting to create a regulatory negligence claim against a State agency to be haled

 before the Industrial Commission under the STCA, is extraneous and obiter dicta.

 Neither the plurality nor the concurring opinion addresses the primacy of sovereign

 immunity as the general rule and the limited and express statutory waiver and

 exception under the STCA to allow tort claims only when and “if a private person

 would be liable to the claimant.” Ray, 366 N.C. at 4, 727 S.E.2d at 678 (citation

 omitted).

¶ 70 Under the NCAPA, for an aggrieved party, an administrative law judge may:

 Order the assessment of reasonable attorneys’ fees and
 witnesses’ fees against the State agency involved in
 contested cases decided under this Article where the
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 administrative law judge finds that the State agency
 named as respondent has substantially prejudiced the
 petitioner’s rights and has acted arbitrarily or capriciously
 or under Chapter 126 where the administrative law judge
 finds discrimination, harassment, or orders reinstatement
 or back pay.

 N.C. Gen. Stat. § 150B-33(b)(11) (2019).

¶ 71 Presuming DHHS or its employee-agent did not act professionally or

 reasonably during the scope of their investigation or in preparing its 400-page

 “Statement of Deficiencies,” the NCAPA provides an adequate and exclusive state

 remedy for allegedly improper or unjustified regulatory action by a state agency or

 employees.

¶ 72 Under the NCAPA’s waiver of immunity and the enacted administrative

 procedure and remedies statute, an aggrieved party may challenge state regulatory

 action, and seek a remedy. If plaintiff had continued to pursue its claims before the

 OAH and won, it could have pursued reversal of the administrative action, remedial

 actions, and an award of attorneys’ fees in the contested case by showing defendant

 “substantially prejudiced” its rights and acted “arbitrarily or capriciously.” N.C. Gen.

 Stat. § 150B-33.

¶ 73 “[T]he law encourages settlements” of disputes. Kirkpatrick & Assocs. v. Wickes

 Corp., 53 N.C. App. 306, 311, 280 S.E.2d 632, 636 (1981). Plaintiff voluntarily did so

 here and chose not to pursue its NCAPA administrative remedies to completion. That
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 settlement does not give rise to any cognizable claim for regulatory negligence before

 the Industrial Commission.

¶ 74 Similarly, in an appeal following the NCAPA contested case, plaintiff could

 have sought attorneys’ fees for the appeal and the administrative proceedings if it

 persuaded an appellate court that defendant acted “without substantial justification

 in pressing its claims.” N.C. Gen. Stat. § 6-19.1 (2019). Plaintiff here did neither and

 settled its claims prior to hearing and waived and exhausted its administrative

 remedies. Id.

¶ 75 The General Assembly enacted public policy and created a comprehensive

 statutory procedure to allow and govern aggrieved party challenges to regulatory

 action through a contested case, including in the specific context of sanctions and

 penalties assessed, and suspensions of admissions to non-compliant adult care

 homes. The General Assembly provided clear, but limited, internal and external

 remedies for parties who claim injury by unjustified regulatory agency action.

 Negligence claims before the Industrial Commission challenging regulatory actions

 and sanctions are not cognizable within the STCA’s limited waiver of sovereign

 immunity, and such putative claims are not within the jurisdiction of the Industrial

 Commission. If aggrieved, plaintiff possessed adequate State remedies available

 under the NCAPA and the OAH and failed to exhaust them. N.C. Gen. Stat. § 150B-

 33. Plaintiff’s claims are properly dismissed.
 CEDARBROOK RESIDENTIAL CTR., INC. V. N.C. DEP’T OF HEALTH & HUM. SERVS.

 2021-NCCOA-689

 Tyson, J., dissenting

 VI. Conclusion

¶ 76 Defendant’s regulatory activities and sanctions are exclusively state actions

 under North Carolina’s sovereign immunity. Plaintiff has failed to show any

 enforceable duty owed or breach thereof on part of DHHS, “if a private person would

 be liable to the claimant.” Plaintiff’s complaint is properly dismissed as not

 cognizable under the limited sovereign immunity waiver of the STCA. Plaintiff failed

 to pursue and exhaust available and adequate administrative procedures and

 remedies properly asserted under the NCAPA and the OAH.

¶ 77 Plaintiff’s own negligence contributed to its predicament by allowing squalor

 and deplorable conditions to exist, and like the Type A violations in Tang, allowed an

 elderly patient to walk out and be found alive five miles away at an interstate

 highway, failed to provide adequate oversight of its vulnerable populations in

 residential adult care facilities, and utterly failed to abide by state-mandated statutes

 and regulations. If there are any true victims or duty owed or breach thereof here, it

 is plaintiff’s duty to their elderly, dependent, suffering, and neglected residents, and

 not the taxpayers of North Carolina to the plaintiff. This appeal is properly reversed

 and remanded to the Commission to dismiss. I respectfully dissent.